# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 07-20110 |
| ) | |
| **VIRGIL DINKINS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## OPINION

On November 7, 2007, Defendant was indicted on the charges of conspiracy to distribute 5 or more kilograms of cocaine and distribution of cocaine. On February 7, 2008, Defendant Dinkins filed a Motion to Suppress (#9). In his motion, Defendant asserts his vehicle was stopped at approximately 4:25 p.m. on August 24, 2006, in Bradley, Illinois. Defendant indicates that after the stop he was taken to the Bourbonnais Police Department where he made incriminating statements. Defendant argues in his motion that the statements he made were not voluntary. Specifically, Defendant asserts that he believed that in return for his cooperation with officers he would not be charged with any criminal offenses. Defendant further argues that officers lacked probable cause to arrest him. As a result, Defendant asks that the court suppress the statements made by Defendant Dinkins on August 24, 2006. On March 14, 2008, the Government filed its Response (#12) to the Motion to Suppress.

This court held an evidentiary hearing on the motion on March 25, 2008, and on April 4,

2008. At the conclusion of the hearings, Defendant was allowed until May 19, 2008, to file his proposed findings of fact and conclusions of law with the Government to respond by June 2, 2008. By May 30, 2008, Defendant had failed to file anything with the court. This court therefore entered a text order indicating the court would rule on the motion to suppress without further briefing if Defendant failed to file the document by June 6, 2008. On June 6, 2008, Defendant filed his Closing Argument on the Motion to Suppress (#14). The court finds no further briefing from the Government is required. For the reasons that follow, Defendant's Motion to Suppress is DENIED.

## FACTS

At the evidentiary hearing held on Defendant's Motion to Suppress, the Government first presented the testimony of Ty Collins, an agent with the Drug Enforcement Agency (DEA). Collins testified that the instant case arises out of an investigation of a drug conspiracy which resulted in the prosecutions of Jose Rios, Gerardo Lugo, Heriberto Diaz, Jason Ward, Brent Goselin, Christopher Morrissette, Mario Macias, Robert Odeneal, and James Pline, all of whom have appeared before this court. Collins indicated that on December 22, 2004, officers utilized a confidential source, Christopher Morrisette, to conduct a controlled purchase of approximately 4.5 ounces of cocaine from Defendant Dinkins at his residence in Bourbonnais. Morrissette was searched prior to the transaction and provided with $3,000 in currency and an audio recording device. Collins indicated that when Morrissette was searched after leaving Defendant Dinkins' residence, he possessed cocaine but no longer possessed the currency. The controlled purchase was also recorded. In a transcript of the recording presented as an exhibit in the Government's presentation of evidence, Dinkins makes several incriminating statements. Collins testified that in August 2006, a decision was made to issue arrest warrants for many of those involved in the drug conspiracy. According to

-2-

Collins, Jamal Simington of the Illinois State Police was assigned to make a warrantless arrest of Dinkins and to interview him.

The Government next called Jamal Simington, a sergeant with the Illinois State Police, who testified as follows. On August 24, 2006, Simington was assigned to locate Dinkins, execute a warrantless arrest, and attempt to interview him. At approximately 4 p.m., Simington and Agent Jeff Martin observed Dinkins in Bradley, Illinois. Simington asked a Bradley police officer in a marked car to perform the stop of Dinkins. After he was stopped, Simington informed Dinkins he wanted to talk to him at the police department. Dinkins was then transported to the Bourbonnais Police Department by Zack Johnston of the Kankakee Police Department. After his arrival at the station, Dinkins was allowed to speak with his attorney, Gus Regas, with the use of his cellular telephone. After speaking with Regas, Dinkins indicated he would participate in an interview. Simington testified that Dinkins was read his <u>Miranda</u> rights and that Dinkins signed a written <u>Miranda</u> waiver before being asked any questions. The signed consent form was entered into evidence at the hearing and indicates Dinkins signed the waiver at 4:47 p.m. Simington testified that Dinkins was never told he would not be charged if he cooperated. Rather, Simington testified that Dinkins was told only that his cooperation would be communicated to the Government.

The Government also called Zack Johnston of the Kankakee Police Department to testify. Johnston, along with Agent Martin, was present for the interview of Dinkins. Johnston testified that Dinkins signed the waiver of his <u>Miranda</u> rights before any questions were asked and indicated Dinkins was never told that he would not be charged if he cooperated. The Government also submitted the affidavit of Attorney Regas. In his affidavit, Regas states that he received a call from Dinkins regarding possible drug charges during 2007. At the time of the call, Dinkins was in the

custody of police officers. Regas states that he advised Dinkins "that if he could cooperate with the police and help himself, he should seriously consider doing so." Regas indicates that the police did not discuss with him any agreement regarding Dinkins' cooperation, nor did the police tell him that Dinkins would not be charged if he cooperated.

Dinkins also took the stand on his own behalf at the hearing on the motion to suppress and provided the following testimony. When Dinkins was pulled over on August 24, 2006, Simington took his cell phone. Dinkins asked if he was under arrest and Simington told him that he was not yet under arrest. Dinkins stated he wanted to go home, but the officers told him to exit the vehicle and informed him he was in the process of being arrested. After Dinkins exited the vehicle, the officers searched his car. The officers then told Dinkins they needed to talk to him and informed him they could hold him for 72 hours with no lawyer. Dinkins testified that the officers blocked his entry into his car. Dinkins further testified that Simington drove him to the Bourbonnais Police Department and asked him if he remembered selling 9 ounces of cocaine to "a black guy" at a bar. Dinkins stated he had not been given his <u>Miranda</u> warnings at the time. Upon arriving at the Bourbonnais Police Department, Dinkins told Johnston and Martin that he wanted to talk to his lawyer. Simington then called Attorney Regas and gave Dinkins the phone. Dinkins testified that Attorney Regas told him to tell the officers what he knew and he would "walk." Dinkins stated he thought after speaking with officers he would go home and have to testify later against others. Dinkins further indicated that the officers talked to him about witness relocation. Dinkins stated he would not have talked to the officers if he had known that he would be charged. On cross examination, Dinkins indicated that the officers never told him he would not be charged or would receive immunity if he talked to them, but based his belief on his conversation with Attorney Regas.

In rebuttal, the Government recalled Johnston who testified that it was he who drove Dinkins to the police station rather than Simington.

## ANALYSIS

At the outset, this court notes that, after observing the manner and demeanor of the Government's witnesses while testifying, it found their testimony to be very credible. The testimony of the Government's witnesses was both straightforward and candid. In addition, their testimony was both internally consistent and consistent with each other. Furthermore, after observing Dinkins' manner and demeanor while testifying, this court found the testimony of Dinkins to be less credible than the testimony of the Government witnesses.

In his motion to suppress, Dinkins first argues that the officers interrogated him in violation of his Miranda rights. "Under Miranda, a suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination." United States v. Thompson, 496 F.3d 807, 810 (7th Cir. 2007). Whether a person knowingly and voluntarily waives his Miranda rights depends on the totality of the circumstances. United States v. Jackson, 300 F.3d 740, 748 (7th Cir. 2002). In making this determination, courts look at such factors as defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion. Jackson, 300 F.3d at 748. In the instant case, Johnston and Simington both testified that Dinkins was advised of his Miranda rights and signed a written waiver of those rights before any questions were asked. While Dinkins asserted that Simington asked him questions as he was transported to the Bourbonnais police department, both Simington and Johnston testified that it was actually Johnston who transported him. As discussed above, this court found

the testimony of Simington and Johnston to be very credible. Thus, this court concludes that Dinkins understood and waived his Miranda rights prior to being questioned by officers on August 24, 2006.

Dinkins further argues that this waiver was involuntary based upon his belief that he would not be charged if he cooperated with the officers. However, this assertion is belied by the testimony at the hearing. Both Simington and Johnston testified that Dinkins was never told he would not be charged if he agreed to speak with officers. Dinkins himself admitted on cross-examination that the officers never told him that he would not be charged, but rather he based this belief on the conversation he had with Attorney Regas. However, Regas stated in his sworn affidavit that the officers did not tell him Dinkins would not be charged and that Regas only informed Dinkins "that if he could cooperate with the police and help himself, he should seriously consider doing so." Accordingly, this court finds that the evidence presented at the evidentiary hearing clearly demonstrates that Dinkins knowingly and voluntarily waived his Miranda rights prior to answering the officers' questions.

      Dinkins also raises a Due Process claim in his motion to suppress, arguing his confession was rendered involuntary by these same alleged promises that he would not be charged if he cooperated with law enforcement. As concerns Defendant Dinkins' Due Process claim, a confession is voluntary if, in the totality of circumstances, it is the product of rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. United States v. Gillaum, 372 F.3d 848, 856 (2004). Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. Gillaum, 372 F.3d at 856. Factors relevant to a determination that police conduct is coercive include the defendant's

age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep. Gillaum, 372 F.3d at 856-57. If the court were to find that agents promised Defendant he would not be charged if he confessed, such a finding could render the confession inadmissible. See United States v. Kontny, 238 F.3d 815, 817 (7th Cir. 2001). However, as discussed above, based upon the credible testimony of Simington and Johnston, the evidence presented at the evidentiary hearing establishes that no such promises were made. Dinkins makes no other allegations which would support a finding that his Due Process rights were violated when he made statements to police on August 24, 2006. Accordingly, this claim must fail.

Finally, Dinkins argues that his warrantless arrest was made without probable cause. "For a warrantless arrest to be reasonable, law enforcement agents must have probable cause, which exists if, given the facts and circumstances within their knowledge at the time of arrest, the agents reasonably believed that the suspect had committed or was committing a crime." United States v. Funches, 327 F.3d 582, 586 (7th Cir. 2003). "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." Funches, 327 F.3d at 586. "In making probable cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." Funches, 327 F.3d at 586.

Based upon the evidence presented at the hearing on the motion to suppress, there was certainly sufficient probable cause for officers to arrest Dinkins on August 24, 2006. Agent Collins,

whom this court found to be a very credible witness, testified that on December 22, 2004, officers utilized a confidential source, Christopher Morrisette, to conduct a controlled purchase of approximately 4.5 ounces of cocaine from Defendant Dinkins at his residence in Bourbonnais. Morrissette was searched prior to the transaction and provided with $3,000 in currency. Collins indicated that when Morrissette was searched after leaving Defendant Dinkins' residence, he possessed cocaine but no longer possessed the currency. This controlled purchase gave officers the probable cause necessary to arrest Dinkins on August 24, 2006. Accordingly, this claim must also fail.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion to Suppress (#9) and Supplement to the Motion to Suppress (#14) are DENIED.

(2) This case remains set for a status conference by personal appearance on June 12, 2008, at 1:30 p.m.

ENTERED this 10th day of June, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE